UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAVID ALLEN WOODRUFF, )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>GENE L. ISAACS, *et al.*, )<br>)<br>Defendants ) | CAUSE NO. 3:05-CV-607 RM |

OPINION AND ORDER

David Woodruff submitted a complaint under 42 U.S.C. § 1983, alleging that Cass County Jail officials violated his federally protected rights while he was confined there. The court screened the complaint pursuant to 28 U.S.C. § 1915A, and allowed him to proceed against Sheriff Gene Isaacs, Jail Commander Connie Johnson, and Jail Nurse Denise Harper on his claim that they were deliberately indifference to his serious medical needs.

The defendants have moved for summary judgment pursuant to FED R. CIV. P. 56; Mr. Woodruff has responded. For the reasons that follow, the court grants the defendants' summary judgment motion.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. Hughes v. Joliet Correctional Ctr., 931 F.2d 425, 428 (7th Cir. 1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. Celotex Corp., 477 U.S. at 324.

> . . . In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Ranochakio Corp., 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996).

The defendants have moved to strike the plaintiff's surreply to their reply to their response pursuant to Local Rule 56.1(a). The Local Rule does not contemplate a surreply, but neither does it explicitly preclude one. In the circumstances presented here, the court will deny the motion to strike, and will consider Mr. Woodruff's submission.

Mr. Woodruff alleges that the jail medical staff diagnosed him as having a hernia but refused to treat it. He asserts that he asked Nurse Harper what they intended to do about his hernia and she replied "nothing." According to his complaint, he advised her that the hernia was growing and causing him pain but the defendants continued to refuse him medical treatment.

The defendants submit their own affidavits, portions of Mr. Woodruff's medical records, and portions of his deposition. Mr. Woodruff responds with a page from his medical progress notes and a note purporting to be from Nurse Harper stating "just because you have a hernia do[es] not mean something has to be done for it."

The parties agree that Mr. Woodruff first submitted a sick call request for his hernia on August 21, 2005.  They also agree that while he was at the jail, two doctors and Nurse

2

Harper saw him for his hernia — though Mr. Woodruff doesn't always agree with the defendants about when particular visits occurred.

According to his medical records, Nurse Harper examined Mr. Woodruff on August 24, 2005, and detected a soft mass along the inguinal area on his left side. She reported her findings to Dr. Bellar, who examined Mr. Woodruff the next following day and noted an easily reducible left side inguinal hernia. Dr. Bellar ordered medication and a urinalysis. The urinalysis, which Nurse Harper performed on September 7, showed no sign of infection.

The parties agree that Mr. Woodruff submitted a second sick call request on September 8, 2005, inquiring about the status of his hernia treatment. Mr. Woodruff states that Nurse Harper responded "just because you have a hernia doesn't mean we have to do something." (Woodruff Deposition at p. 56). Nurse Harper says she told him she would continue to monitor his condition, and responded in writing that some hernia conditions merely require observation and do not require surgery. (Harper affidavit ¶ 14).

On October 4, 2005, Mr. Woodruff submitted a sick call request for another medical complaint, and also mentioned that his hernia was sore. He didn't report any aggravation of his condition or request to see a doctor.

On October 15, Mr. Woodruff submitted another sick call request form stating that he was experiencing pain and believed that his hernia had grown larger. Nurse Harper responded that she would advise Dr. Davis, who had apparently replaced Dr. Bellar as the jail doctor. According to Mr. Woodruff's medical records, Dr. Davis examined him and noted that the hernia was "very small" and reducible. Dr. Davis observed no redness or

3

tenderness and noted that the hernia was "nonincarcerated." Dr. Davis discussed the risks and benefits of surgery and informed Mr. Woodruff that surgery wasn't necessary for his current condition because the hernia was not strangulated. (Harper affidavit ¶ 18). Dr. Davis prescribed Tylenol for pain, continued him on Metamucil, and suggested increasing his fluid intake, avoiding strenuous lifting, sports, and calisthenics. Mr. Woodruff was transferred to the custody of the Indiana Department of Correction on November 21, 2005.

Mr. Woodruff stated in his complaint that he was a pretrial detainee when these events occurred; the defendants assert that he was a convicted felon. The Eighth Amendment's prescription against cruel and unusual punishments applies to persons convicted of crimes; the rights of pre-trial detainees are derived from the Fourteenth Amendment's Due Process Clause. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979). But "there is little practical difference between the standards utilized under the two amendments." Garvin v. Armstrong, 236 F.3d 896, 898 (7th Cir. 2001), *citing* Weiss v. Cooley, 230 F.3d 1027, 1032 (7th Cir. 2000).

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294 (1991). In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). A hernia may constitute a serious medical need, but many

4

hernias do not require extensive treatment or surgery. Johnson v. Doughty, 433 F.3d 1001 (7ᵗth Cir. 2006).

"Under the Eighth Amendment, [a plaintiff] is not entitled to specific care . . . [or] . . . entitled to the best possible care." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997). Negligence or medical malpractice do not constitute deliberate indifference, Estelle v. Gamble, 429 U.S. at 106, and a mere disagreement with a physician over a course of medical treatment states no claim under § 1983 Brownlow v. Chavez, 871 F.Supp. 1061, 1064 (S.D.Ind. 1994). Even medical malpractice and incompetence state no claim of deliberate indifference. Walker v. Peters, 233 F.3d 494 (7th Cir. 2000).

The parties' submissions establish that jail doctors saw Mr. Woodruff and prescribed some treatment for his hernia, though they did not find that he required surgery and Mr. Woodruff believes the treatment they prescribed was ineffective. That a doctor sees an inmate and treats him by prescribing medications normally establishes lack of indifference to the inmate's medical problems. Estelle v. Gamble, 429 U.S. at 107-108.

The parties' submissions do not suggest that Nurse Harper was deliberately indifferent to Mr. Woodruff's hernia problem. When Mr. Woodruff complained to her, she examined him and arranged for him to see a doctor. On subsequent occasions she responded to his health care requests, and again referred him to a doctor. The doctors diagnosed Mr. Woodruff has having a hernia, and prescribed treatment. Not all hernias require surgery, and the doctors who examined him concluded that Mr. Woodruff didn't need surgery for his condition at that time. Even if Nurse Harper told Mr. Woodruff, as he alleges, that they did not need to do anything for his hernia, it states no Eighth Amendment

5

claim because she referred him to the jail doctors who made the determination what treatment to prescribe and whether his hernia required surgery or other treatment.

Mr. Woodruff sues Sheriff Sheriff Isaacs and Jail Commander Johnson for damages in their individual capacities.[1] But he doesn't assert that they had any direct personal involvement in his medical treatment, and their affidavits establish that they did not.

Section 1983 creates a cause of action for damages based on personal liability. A person cannot be held liable under § 1983 unless the person was personally involved in the alleged wrongdoing. A plaintiff must allege facts showing the defendant's participation or direct responsibility for the conditions of which he complains, Starzenski v. City of Elkhart, 87 F.3d 872, 879 (7th Cir. 1996), by demonstrating a causal link between the defendant's conduct and the plaintiff's injury. Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985). The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. Moore v. State of Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993).

Administrators are entitled to rely on the judgment of medical professionals such as Drs. Bellar and Davis. See Johnson v. Doughty, 433 F.3d at 1015; Zentmyer v. Kendall County, Ill., 220 F.3d 805, 812 (7th Cir. 2000); Shakka v. Smith, 71 F3d 805, 812 (4th Cir. 1995). The doctors who examined Mr. Woodruff concluded that surgery was not necessary to deal with Mr. Woodruff's hernia and prescribed other treatment. Defendants Isaacs and Johnson were entitled to rely on those determinations.

---

[1] The defendants also move for summary judgment on any official capacity damage claims Mr. Woodruff may have properly raised. This court will not address this portion of the summary judgment motion because it does not construe the complaint as presenting a valid official capacity damage claim.

For the foregoing reasons, the court DENIES the defendants' motion to strike (docket #59), GRANTS the defendants' motion for summary judgment (docket #50), and DIRECTS the clerk to enter judgment in favor of the defendants and against the plaintiff.

SO ORDERED.

ENTERED: January  29 , 2007

 /s/ Robert L. Miller, Jr. 
Chief Judge
United States District Court
